I've lost a mild guesstimation that upon arriving in the court I would have vivid models of the subject of the litigation displayed out there. And up here on the table I have one here and here and here. So let's just say, since it's being recorded, I lost the speculation about that matter. But anyway, it was mild anyway, so at any event, we had robust discussions of how many of these things we'd see, whether there would be a screen in here, or whether we'd have a table. But anyway, none of that has anything to do with how the case comes out, I'm just ventilating that we fully expected after reading the briefs that you all would want to recess before we called you up to bring in the models and we'd be set up, or it wouldn't be the last case to argue. But at any event, we'll decide, I've just, we do pay attention. So at any event, none of that is meant to alter the way you, I'm just having a little fun. Thank you, Chief Judge Stewart. We've, of course, included a number of photos in our briefing. You did? That's what got us salivating that if we get all this in the briefs, surely we will get one or two models, and you'd pull the chassis from the bottom, and then there would be other, anyway, this is directed at the other side as well, they're getting their chuckle. But please, I'm not. They're going to rush out and go get some right now. I would encourage them to, they're immensely fun, Your Honor. I'm not making light of the litigation, you know that, I'm just having a little good-natured ... Anyway, you understand. Thank you, Chief Judge Stewart. May it please the Court, there are three reasons why the text and structure of the contract require a reversal. The first is the use of the definite article, the. Second is the contract's express exclusion of liquid fuel-powered products like the nitro. Third is basic common sense, supported by New York law and the behavior of the parties. No one pays royalties for products that aren't branded. I'd like to take each of those points in turn, Your Honors. Let's start with the text. The key provision in the royalty rate clause speaks to products manufactured with the stampede chassis and or stampede body. That definite article, the, is a critical limiting term. It signals that the reference to the stampede chassis cannot include other products, such as the nitro and VXL. They are not the stampede. And we've cited numerous cases on pages 45 and 46 of our brief, relying on the definite article, the, to limit subsequent terms. We've briefed this issue in detail, and Feld has never responded. Feld's brief nowhere contests the importance of the definite article. Instead, Feld asks this Court to read different words into the contract. Feld's position is set out at page 7892 of the record, and that position is that the used on a stampede model, end quote. But that is not what the contract says. It says the stampede chassis, not any chassis. It says the stampede chassis, not a stampede model. Our second textual argument concerns paragraph two of Exhibit A, where the contract limits RC vehicle units to battery-operated products only. That clause excludes liquid fuel-powered vehicles like the nitro. Now, paragraph five, which is the key royalty rate clause at the heart of this dispute, relies on that defined term, RC vehicle units, seven times. It provides that royalties are due on RC vehicle units that are, quote, manufactured with a stampede chassis and or stampede body. So, to be eligible for royalties, the product must be, number one, manufactured with the stampede chassis and or the stampede body, and two, battery-operated. Traxxas's interpretation harmonizes those two provisions. Feld's interpretation creates a conflict by sweeping in the nitro, which is powered by liquid fuel. Finally, Your Honors, Traxxas's interpretation is correct because it comports with common sense. As a common sense matter, Your Honors, you pay for value you receive. You don't pay something for nothing. In the licensing arena, nobody would pay royalties on a product that is never going to be branded. Now, Traxxas is and was happy to pay royalties for Feld's IP in connection with the stampede, which is the only product that has ever carried Feld's branding. But no one would agree to pay royalties on an entirely different set of products. That's why common sense supports Traxxas's interpretation. And it's not just common sense, Your Honors, it's also the conduct of the parties. For three years, we sent Feld quarterly statements and payments for the stampede that noted they were for the stampede. Feld happily accepted them and never objected. Now our brief offers this Court a second path to grand judgment to Traxxas. Under New York law, a contract cannot be ambiguous unless it is subject to two or more reasonable competing interpretations. Feld's proposed interpretation is unreasonable and thus it cannot render the contract ambiguous. There are three principal flaws with Feld's interpretation that I'd like to review. First, Feld's interpretation conflicts with the text because it would sweep in the liquid fuel powered nitro. As we discussed a moment ago, Paragraph 2 of Exhibit A defines the products at issue to include only those that are battery operated. Feld's interpretation contradicts that provision. Second, Feld cannot account for the 30,000 unit exemption built into Paragraph 5 in the royalty rate clause. Feld has never disputed that the reason for the 30,000 unit exemption is that it reflects the number of stampedes that Traxxas would sell, not nitros, not VXLs, but stampedes. The sales figures for the various products are set out at page 4367 of the record. I thought they said the 30,000 exemption on the front end was sort of the quid pro quo for them not getting any of the royalty benefit on that while at the same time your client was getting the sponsorship and other contracted benefits so then after the 30,000 then it kicked in. I'm not stating it as articulately, but I thought that was my sense of their take on the 30,000. No, it's correct, Chief Judge Stewart, that the parties agree that the 30,000 unit exemption, the fact that there is an exemption, is to account for Traxxas' concerns about cannibalization. But the key question, Chief Judge Stewart, is why 30,000? Why not 5? Why not 100? Why not a million? The reason for 30,000 is that is the number of stampedes that Traxxas was going to sell. When the parties were negotiating this deal in 2010, Traxxas knew that 30,000 was going to be about where they would end up and indeed that's exactly what came to pass, Your Honor. Traxxas ended up selling over 30,000 stampedes in 2010. If the parties had meant to include all of the other products, they would have picked a much larger number than 30,000. As set out at page 4367 of the record, there were about 10,000 units of the other models that were sold that same year, so the exemption would have been different if those other products were meant to be included because, as Feld has conceded, the goal was to prevent cannibalization. There's a third flaw in Feld's interpretation I'd like to point out and that is that it defies common sense. According to Feld, Traxxas agreed to pay money for nothing. Feld's IP has never appeared on any product other than the stampede and yet Feld now seeks to claim Traxxas' profits from other products that were never part of the parties' discussion and never part of this deal. Feld's interpretation further makes no point, no sense in light of the price points of the various vehicles. Now, the royalty rate clause includes graduated royalty payments. It's 3% royalties for the first 10,000 units above 30,000. It's then 4% for the next 10,000 units over 40,000 and then 5% for all units above 50,000. Now, that graduated system makes sense when all of the products are the same price, i.e. stampedes and monster jam stampedes. But it makes no sense when the price points are all over the map. Under Feld's interpretation, Traxxas' royalty payments would vary depending on which month they sold which products. Traxxas would pay fewer royalties if they sold their 4x4s in February and their stampedes in October than they would the other way around. That's the type of nonsensical result that New York courts reject. Finally, one last point. It's worth noting that during the negotiation process, Feld initially proposed a royalty structure that would require royalty payments on all monster jam stampede trucks but without any 30,000-unit exemption. Traxxas rejected that deal and proposed a different one that was accepted. But if Traxxas had accepted that deal, Feld would have received about $47,000 over the lifetime of the deal more than it was actually paid. Yet now, Feld claims in this court that it created a contract that calls for an extra $1 million in payments. These are all reasons to conclude that Feld's interpretation defies common sense. Are you going back to saying that the court should have found that the contract was legal or that the jury verdict was an unreasonable interpretation of the contract, that it was ambiguous and the jury's finding was an incorrect interpretation? Are we saying by law it was clear and the judge should have tossed it out and made a ruling or the jury's verdict was incorrect? The former Judge Prado. We argued that this case never should have gone to the jury in the first place and we have not presented an evidentiary challenge before this court regarding what happened at trial because our core position is there never should have been a trial. We moved for summary judgment on the exact issue that we're pressing before this court now. We re-urged that issue at the Rule 50A stage, the Rule 50B stage, the Rule 59 stage. The court should have decided this case as a matter of law at the summary judgment stage and never sent it to a jury at all.  No, Chief Judge Stewart. We argued that the contract was unambiguous. That it was clear and that the only reasonable reading of the contract was the view that you articulate. That's correct, Chief Judge Stewart. That was the position made to the district court in your motions, correct? Correct, Chief Judge Stewart. The parties cross-moved for summary judgment. Both parties argued that the contract was unambiguous and both parties argued that the application supported their position. The district court rejected those motions and sent the matter to trial. The district court viewed that in this heavily negotiated agreement, each side had a, quote, reasonable interpretation of the document such that it was unwilling to discern which one was the or should be the prevailing view. At least that's the way I read the denial, not so much that your view was, quote, incorrect, but that the other view was equally reasonable reading from the text. You emphasized the Article B, da-da-da-da-da, they argued something else, so it didn't grant either one of the dueling motions, but then let the case go to the jury. So we kind of had a threshold issue about that of whether, you know, on the Blessee, you know, you're here in good stead, but I don't think we're going to spend most of the time on that, but ... Chief Judge Stewart, it's correct that I think the district court believed that both parties had advanced a reasonable interpretation, but of course, that's exactly what we're challenging on appeal. Under New York law, a contract can only be ambiguous if there are two or more reasonable competing interpretations. The parties agree that whether a contract is ambiguous or unambiguous is a pure question of law for the court. You don't need a jury to decide that. So you want ... and then I'm going to go to Judge Ween, and we're not going to run out of time on this. So you would want the panel to hold the district court reversibly erred in determining that there were two reasonable views of this contract. That's one way that this panel could decide the case, Your Honor. We've offered the panel two ... I know, I know. I'm just ... I'm trying to catch up with where y'all are with this and just sequence, but I mean, one argument, at least at this point, is that we should reverse because as you said, you haven't challenged the evidentiary sufficiency as they point out in their brief. So, your main argument, strong argument, whatever, is focus on the denial of the summary judgment that states and it was reversible error for the district court to A, conclude that there were two reasonable views of this or B, to not discern that yours was the one and only correct view and then grant judgment as a matter of law, right? I mean, that's at least one layer of the principle argument you make to us. That's exactly right, Chief Judge Stewart. I couldn't have said it any better myself. Okay. I'm just trying to make sure I'm staying up at least to where that part, and I will agree having the cars here or not wouldn't help that piece of it. Okay, Judge Wiener, I cut, but we're not going to run out of time. We got time for this. So, Judge Wiener, I have questions for you. First is, is this not the definition of ambiguity if there are two reasonable interpretations of the contract? You strongly advocate yours, your opponents strongly advocate theirs. Why isn't that ambiguous? Your Honor, the courts in New York have indeed held that if there are two reasonable competing interpretations, then a contract can be ambiguous. Our point here, Your Honor, is that Feld's interpretation is not reasonable. I understand that they've pressed their interpretation vigorously throughout this litigation, but it's simply not reasonable for the reasons that I set out earlier. It ignores the the, the definite article. It contradicts paragraph 2 in Exhibit A, and it has no explanation for the 30,000-unit exemption that the parties built into this contract. And finally, Your Honor, it simply defies common sense. It would require Traxxas to pay something for nothing. Those are all the reasons why Feld's interpretation is not reasonable, Judge Wiener. And I'm sure they're going to say why yours isn't. But that, then there's an overarching question, and that's appellate jurisdiction. Can you explain why, under Blessee-Marine, we have jurisdiction to hear this? Yes, Judge Wiener, I can, I'd be happy to talk about that. Judge Stewart, Chief Judge Stewart alluded earlier to the motion for summary judgment. Just to be clear, we are not appealing the denial of our motion for summary judgment. We are appealing the denial of our post-trial Rule 50B motion, where the district court considered this argument that we're making on appeal and rejected it. In light of that, the other side is correct that you cannot appeal the denial of a motion for summary judgment. But I want to be clear that that is not what we are doing here. We are simply appealing the denial of our 50B. And again, the motion for summary judgment raised the core argument before this Court. We re-upped to that argument at the Rule 50. So you had a Rule 50 motion, and you re-asserted it? That's correct, Your Honor. We brought up the legal issue we present to this Court now in the Rule 50A motion. The record pages are page 579, 583, and 581. In the 50B motion, we then pressed our core argument again three times above the line and several times in footnotes. We've included in our brief the citations to our Rule 50B where we talk about the issue presented to this Court now. For example, on page 982 of the record, we invoked the rules of contract interpretation to argue that we were entitled to judgment as a matter of law. We explicitly noted on record page 985 that Feld's interpretation creates an absurd result and therefore cannot be reasonable. And of course, we re-upped these points again in the Rule 59 motion. For all those reasons, this Court has jurisdiction. One question. In the royalty provision, it seems to have its own definition of licensed articles. Do we not follow that? Do we go outside of that provision? And if we go outside that provision and you have another definition of licensed articles, isn't there ambiguity if we have two different definitions of licensed articles? Not at all, Your Honor. The key term here is the RC vehicle units. In paragraph 2 of the License Articles Clause, it defines RC vehicle units as battery operated, remote control operated monster truck vehicles. That RC vehicle units term is never altered anywhere else, and as I noted earlier, it appears seven times in paragraph 5. So paragraph 2 talks about what licensed articles are, defines them with reference to RC vehicle units, and defines RC vehicle units. And then in paragraph 5, the license or the licensing fees apply to RC vehicle units, and paragraph 5 never alters that definition, Judge Prado. Do we have any clear in here, the definition in the contract, the definition between a stampede chassis and a stampede body, and how are we to distinguish what those two terms mean? Judge Prado, there is no defined term clause in the contract that defines exactly what the contract means by a stampede. And so what New York courts would do in the circumstances, they would look to custom and usage and other evidence of the party's intent outside the four corners. And New York courts have made clear that the court can do that as a matter of law without resorting to the jury. We've cited some of these cases in our brief. There's a Louisiana generating case, 831 F3RD 618, International Multifoods Corp, 309 F3RD 76. These cases stress that custom and usage can be considered at the pretrial stage as a matter of law. And in a case like this, Judge Prado, where stampede is not defined elsewhere in the contract, this court should look to those sources to figure out what it means. Are there sources? I mean, do we have any evidence of the custom and usage of these terms in the industry? The best source, Your Honor, is the photos that we've included in our brief, which demonstrate all the differences between the chassis platforms and the bodies. There are numerous differences. We go through them in detail in our brief. They're visual, they're functional, all sorts of differences. And the court can consider all of that as a matter of law. But by going outside the contract and looking at the items, aren't we saying it's ambiguous and we have to go outside the contract to look at these things to make it clear what they mean? Aren't we then going outside the contract and saying it's ambiguous? So we're cleaning it up for you by showing you the models. No, Judge Prado, the court is not doing that. The New York courts that we cite explain how the process works this way. The court can look to custom and usage at the interpretive stage without it becoming a question of fact. And the goal is to resolve not an ambiguity, but a potential ambiguity. If the court is worried that stampede might be ambiguous, the first step is to look to custom and usage and the canons of interpretation, such as contraprofrenum, to see if that potential ambiguity can be resolved. If that fails, then it can be ambiguous and go to a jury. But in this case, we submit it does not fail. This case can be resolved based on the evidence that we have submitted. All right, another question. All right, let me ask you another institutional question. And it's put to both sides. You heard me as regard the other case. I had an institutional moment about the 28Js. Our court has recently discussed sort of a bevy of cases that are, quote, under seal. And so we've had some internal discussions about those and when and how long they stay under seal, yada, yada, yada. So I know this case is under seal. I take it because of the proprietary information, et cetera, et cetera, that's in the case. And so my only sort of admonition, I think we've now put on a website, or we're otherwise trying to communicate, the problem is that we get these cases that come to us under seal. And they kind of stay that way. And nobody ever alerts us when it's OK to unseal them or they need to stay sealed forever, da, da, da. So the only thing I'm saying is that somewhere in the genesis of this case, whenever, down the road, counsel for both sides would just need to alert the court, you know, OK, either it needs to stay sealed because, or it's OK to unseal. You follow what I'm saying? I'm just saying we need to own us some counsel somewhere way down the road, you know, when we've ruled on the case or whatever has happened, to affirmatively indicate to the court the matters were under seal. The only thing that needs to remain under seal is X. Or it can remain under seal if this is redacted or, you follow what I'm saying? Yes, Judge. There's nothing to do with the disposition of the appeal. I'm just saying we don't know as a court, sort of, does it stay sealed? Does it not stay sealed? And this may be one where it is, but it's kind of a common conversation we're having internally because the parties, and we don't ask, don't always alert us when the need for sealing, you know, has left at the district court level. Sometimes there are matters. So it comes to us under seal, and we treat it that way. But because maybe not all issues brief to us are an issue, we don't want to know. And so for obvious reasons, transparency is the way it should be that it's open. So it's just kind of a general alert to you all at some point down the road to notify the clerk or a panel or something that, you know, either we agree it needs to remain sealed and here's the authority for doing it, or it doesn't need to remain sealed except for the exhibits. You see what I mean? Just that kind of, it's a ministerial comment I'm making just so we don't do something we shouldn't do. You know, and unseal it and lift it up. But on the other hand, it just doesn't stay sealed into perpetuity when there's not a real reason. Thank you, Chief Justice Stewart. We'll be sure to do so. Okay, got it. Thank you. All right. All right, let's hear from failed sports. And the latter point, Ms. Kimmett, it was just an FYI, so, you know, in the sealing business. So you can comment on it if you want to, but I know you'll follow what I said anyway, so. Understood, Your Honor. May it please the court, Charles Kimmett on behalf of the Appellee Failed Motor Sports. Your Honors, let me begin with an apology. My colleagues talked me out of bringing the stampede and other lines of vehicles into the court today. But you could have had the real big thing parked outside the courtroom. That's true as well, and I'll need to talk with the client about that, Your Honor. Your Honor, Traxxas here is attempting to avoid a jury verdict in which eight jurors unanimously agreed that Feld's interpretation of the party's license agreement was correct. For Traxxas to succeed here on this appeal, it must prove, it must prove as a matter of law, that its interpretation of the agreement is the only possible reasonable interpretation of the plain language of that agreement. This it cannot do. However, and for reasons that Your Honors have already alluded to, this court need not even reach the merit of Traxxas' appeal. We submit to you that based on what Traxxas has asked for in their brief, and based on the comments that counsel has even tried to walk back under later questions today. The Blessing Marine Services versus Jeff Boat and the Black versus JA Case and Company cases control. Essentially, they have said to the court again today earlier in questioning, and they've said in their briefs that they feel this case should have been resolved on summary judgment and should never have gone to trial. As this court has ruled in Blessing, the general rule in this circuit is that interlocutory order denying summary judgment is not to be reviewed when final judgment adverse to the movement is rendered on the basis of a full trial on the merits. Let me make sure I understood. I thought Mr. Hawkins was trying to be careful to say, and you may say the same thing. I thought Mr. Hawkins was trying to be careful to say that their appeal was not from the denial of their summary judgment file. But their appeal was from their Rule 50 motion, which they renewed after, which wouldn't be within the ambit of Blessing, but I may have misunderstood what he said. But I thought he was being careful to say they weren't appealing from the denial of summary judgment, which would get them into Blessing. So did I hear it right, or is it the same thing, or what? You did hear it right, and his earlier answers to prior questions and their briefs suggest otherwise. Because repeatedly they have said, this should have been decided on summary judgment, this should not have gone to trial. And I submit to you that the distinction of saying, actually, we're only asking for a ruling on Rule 50 that they're trying to make here is not actually a valid distinction when you look at the grounds of their appeal. And we know from Black, the one thing I will say from the Black case is the purpose of summary judgment to save time, expense in a proper case, but when in due course a final trial is had on the merits, it becomes the best test of the rights of the movement. If he wins on trial, he has his judgment. If he loses on a fair trial, it shows that he ought not have any judgment. And that's exactly what occurred here. As Your Honors noted, the district court held that neither party had met their burden in their cross motions for summary judgment and sent this to trial. And as we know from Black also, that decision is a discretionary decision to be made by the district court. And this court won't review that discretionary decision, the decision as the court described it, which is to deny motion for summary judgment. There in Black, it said, even if the movement otherwise successfully carries the burden of proof, if the judge has doubts as to the wisdom of terminating the case before full trial. That was the circumstances here, just like that in Black. And that's why the judgment that was obtained in this case, after viewing all the evidence, is the correct one and unchallenged, and shouldn't be reversed or even considered here. I would also like to address the contention that Your Honor just raised, that the issue that the contract was unambiguous was something that was preserved by Traxxas, because indeed it was not. When Traxxas first made its Rule 50 motion, it did so at the close of the Feld Motorsports evidence at the trial. It stood up and it argued outside the presence of the jury to the court. And in that argument, and we discussed the specific sites to what they said at our brief, Feld Motorsports brief at pages 15 and 16. But in that argument, Traxxas said, flatly accused Feld Motorsports of writing, quote, ambiguous agreements. And also flatly denied that, quote, the language was enough to resolve the party's dispute. Why did they take this position on their initial Rule 50 motion? Indeed, it's because Feld Motorsports' own witnesses had testified that the reading of the contract was absolutely plain to them that it meant what Feld Motorsports said it meant. Traxxas chose, in its motion, not to argue the agreement is unambiguous and ours, Traxxas' interpretation is correct. They said the opposite. They said, look at this. There is ambiguity here, Your Honor, and that should be viewed in favor of Traxxas because Feld is drafting ambiguous agreements. That was when they first raised their Rule 50 motion. Now, at the conclusion of the trial, they again raised a Rule 50 motion. But that Rule 50 motion, and you can go through it, had six different points, all of which were critiquing aspects of the contract that they themselves, in their argument, had to go into all sorts of evidence, the evidence of the type that they go through in their brief here, that one would never look at if, in fact, they believe that the plain language of the contract was dispositive in this case. The only thing they said in their Rule 50 motion, and it was an aside, and it was in passing, it said, while we disagree with the court's decision on summary judgment that this was unambiguous. And they continued on to make their substantive points that didn't address that. Now, it's fine to mention we disagree, but they never said why. There's not one case cited that said, here's why the case law says that it should be decided as an unambiguous contract. Indeed, the parties never briefed that issue in the Rule 50 briefing. And if you look at the Court's decision, the Court, which addressed each of the six issues that were actually put before it on Rule 50, did not address that because that was not an issue that was put to it. You don't think that's enough to preserve the issue to say that they disagreed with the Court's ruling that the contract was ambiguous? Just to say that, just to say, well, we disagree, and then proceed to others, does not. Because what you want to do on Rule 50 is put the trial court on notice. We have a challenge. We have a disagreement. We think you did something wrong, and here's why. And that then has the parties brief that point. It then has the judge address it. The judge didn't fail to address the point because the judge was not careful or not thorough. The judge didn't address that specific point because it was not raised to the judge there. And that is a problem when you then afterwards try to claim the issue was preserved. Now, they do also — I guess what they were saying is, well, we disagree with your primary ruling, your first ruling, that said that it's ambiguous. But now that we have a jury verdict, we don't think there's sufficient evidence, and concentrated primarily on the jury verdict and the evidence. But they said, but we still think you made a mistake to start off with by ruling that it was ambiguous, and you don't think that's enough to preserve it? I don't think so, because I think you would have seen the type of arguments that Traxxas is now trying to make here. And Mr. Hawkins cited a number of cases and made other arguments about ambiguity here, the unambiguity here, which was not made there and was not put to the court. Simply saying, well, we disagree. Of course they disagree. They took the other side. But they didn't say, this is a reason why the verdict was wrong. This is a reason why the jury never should have got the case. And recall, this is a renewal of a motion where they initially argued, this is an ambiguous contract, it's all Feld's fault, and you can't decide it on its plain language. That was its initial Rule 50 motion. Now, they did mention at one point in the argument that, well, we also say this in Rule 59. And there is a footnote in Rule 59 where they say, you know, well, we, you know, as a pro galactic matter, we'd ask the Court to reconsider that this was unambiguous. However, this Court has said very specifically, and this is in Template v. Hydrocap 367F3rd at 478-79, this Court held a Rule 59 motion calls into question the correctness of a judgment. Such a motion is not the proper vehicle for rehashing evidence, legal theories, or argument that could have been offered or raised before entry of judgment. And that's what they failed to do. And they are not able to correct their failure by pointing to a footnote in a Rule 59 motion. We also submit in our briefs the point that Traxas invited the supposed error of which it now complains, specifically, again, when they made their Rule 50 motion, they argued that this was an ambiguous agreement and that the language was enough. I would also cite to you that Traxas, and this is contrary to the other arguments they made, they argued that if it was ambiguous, your interpretation was unreasonable and therefore, as a matter of law, their interpretation should be the controlling contract. That your interpretation was unreasonable. Yes. They said that our interpretation was unreasonable and there wasn't evidence to support that interpretation. And then as a matter of law, then their interpretation should be the controlling interpretation. Isn't that the way the argument went? Based on the evidence. I mean, based on what they were arguing was that based on the weight of the evidence at that point and when you see the evidence that's being discussed, oh, look at stripe patterns, look at this, look at what does it mean to be a stampede or a stampede body. Those are all things that once you ask that question, it's because there's an ambiguity of some type. And the jury resolved that definitively, unanimously, in Feld Motorsports' favor. With respect to the invited error, also there's a case H&H v. CWI White Oaks Landfill, which is a very similar type of case. And that's a case where a party introduced much parole evidence during the course of the trial, and then afterwards changed course and said, wait, there never should have been a trial here. This was unambiguous. And the Court held that a party cannot depart from the four corners of the contract to argue in its favor during trial, then abruptly reverse course and argue that the contract is unambiguous after the jury is unpersuaded by their extrinsic evidence. Your Honors, I'd like to turn to the merits in my remaining time and address the points that were made. In this case, as I believe we've talked about at length, both parties, but Traxxas sells mainly families or lines of radio-controlled vehicles, and each family has its own specific identified trademark name with its own distinctive design and identity. And Stampede is Traxxas' trademark name for an entry-level line of monster trucks. Traxxas sells many other lines of radio-controlled vehicles, each with a different trademark branding. These include the Slash, the Rustler, the Bandit, the Revo, and you can see examples of those on page four of our brief. On one side, you see different models from the Stampede line of vehicles, and on the other side, you see examples of other lines of vehicles, and you can see how the ones on the right from the other lines are so basically visually distinct from those on the left, which are all visually the same. Within each named family, now, when you look at those, within each named family, so Stampede, Slash, Rustler, et cetera, Traxxas has different models, and those models get different what their witnesses called identifiers based on the feature sets that they might have. For example, there's a two-wheel drive brushed engine model that's called the XL5. Now, you can find a Stampede XL5, you can find a Rustler XL5, you can find a Bandit XL5. Similarly, there's a VXL model, which means a faster brushless engine. And that VXL also goes across the different lines. You'll have a Stampede VXL, you can have a Bandit VXL, a Rustler VXL. Similarly, 4x4. Some have 4x4, and some are just two-wheel drive. And again, you can have a 4x4 Stampede, or you could have a 4x4 Revo. And then the 4x4 VXL model has both 4x4 capabilities, and it goes faster with the brushless engine. And again, that goes across the lines. So each line could have the different qualifier like that. But that doesn't change the nature of what the line is. And I also left out the nitro. But again, there are nitros in the different models as well. And that just indicates that this runs on liquid fuel rather than a battery-powered engine. Traxxas enters the agreement with Feld Motorsports so that it could get Feld Motorsports' intellectual property. The famous images, such as Grave Digger and Monster Mutt Grinder, they have trucks with those names that compete in the life-size Monster Jam competitions. And the parties agreed at Traxxas' suggestion that Traxxas would use the Stampede line of vehicles as a basis for those monster trucks. Now you heard some comments here that Traxxas never made trucks based on other models except for the Stampede XL5, the base model of the Stampede. However, there was testimony in the case, and I'll refer the court to the record on appeal 4675, that indicates quite clearly that Traxxas was mocking up 4x4 models of the Monster Jam trucks. And you can actually see images of the 4x4 Feld-branded trucks that they were mocking up for production. At the time of trial, they said they never ultimately did that, but there was also testimony in the record that showed that some of their proprietary sheets that showed pricing for these different vehicles had some selling at a much higher price. But as Your Honors know, when the parties agreed to this system, Traxxas insisted on a royalty provision where the first 30,000 units would be exempted, but in return for that they would include Stampede sales. And we know what they mean by Stampede sales. That's what Traxxas' president said, because Traxxas in this very litigation, and you can see it on page 31 of our brief, made a chart of Stampede sales, which included each and every different model of Stampede. Thus, Stampede sales in the industry, and there's much other testimony that was in the record about how the trade press would refer to Stampede to mean all the different lines, models within the Stampede lineup of vehicles. If you went to Traxxas' website and typed in Stampede, you would get a search result that had every model of Stampede in there. In this case, Traxxas asked, got Feld Motorsports to agree to this royalty rate provision by including Stampede sales. And they did that through creating this agreement. Now we've heard repeatedly from Traxxas that Feld Motorsports has never offered a reasonable interpretation of the agreement. That's just simply not true. And if you look at Section 5 of that agreement, it specifically says it refers to all radio-controlled vehicle units and radio-controlled bodies. And that starts off very broadly. It could include all the different lines of Traxxas vehicles. But then it narrows it to manufactured with the Stampede chassis and or Stampede body. This clause narrowed that first clause. It meant that Traxxas must pay royalties on radio-controlled vehicle units with the Stampede chassis or the Stampede body, or vehicles such as the Monster Jam replicas, which might use a Stampede chassis but have a different body on them. Now what's important is that, and as Your Honor correctly pointed out, there is no definition of Stampede chassis or Stampede body. And in fact, at trial, that became an issue that Traxxas put right at issue in the trial as well. But it was determined at trial that every Stampede unit, including those sold even after the agreement was entered, all had the Stampede body. And it was shown that every model of Stampede body, and I wish I had them here to do this for you, as it was done by the witnesses at trial, fit on that Stampede chassis. And when the new Stampede came out, the VXL 4x4, the President of Traxxas himself testified that if Traxxas were to come out with a new Stampede chassis design and put a Stampede body on it, that new Stampede would be counted in the royalty rate provision. Now, Traxxas puts a couple of arguments out there. One involves the word the. When we submit to you, and you can look at page 4 of our brief, that the the is referring to the Stampede as a line, as distinct from the slash, the revo, the other lines like that. And that's a perfectly reasonable, and indeed the correct, interpretation of that agreement. Second, Traxxas relies on these sales figures, this 30,000 number, and there are two interesting parts of that. First is that Feld Motorsports was never privy to the sales figures and forecasts that Traxxas is relying on now. The fact that we have to look at sales figures and forecasts already suggests there was an ambiguity in this agreement. Because once they have to look at that, then it's clear not from the face of the agreement, it's not clear what this means. Now, second of all, and the judge goes through this quite carefully in ruling against Traxxas on the Rule 50 motion, Traxxas and Feld Motorsports' witnesses both testified that the 30,000 number referred to past sales, not projections of future sales. And the most recent year of past sales figures, at the time the parties discussed the 30,000, actually had, when you included all models of stampede vehicles, just under 30,000. Traxxas should not be able to vary the meaning of the royalty rate provision based on information never shared with Feld Motorsports, and also information that Feld Motorsports, that's inconsistent with their very position. I was going to ask you about the argument about the, but you addressed that, but Mr. Hawkins also alluded to or brought us back to that New York law controls, which it's not in dispute that New York law controls. But what otherwise might be my or our sort of intuitive approach to reading it based on Louisiana or Texas or whatever, that New York law prevails here. So I'm just asking you to respond to what extent does looking at the New York law and controlling alter or augment the argument you're making about the agreement itself? I mean, is there something different about the New York law and its determination of what's ambiguous, what's not, etc., etc., from your standpoint versus what we've heard from counsel opposite? Right, well from, I believe that the most important thing about New York law that makes it different with this determination is that, in order to try and sweep in all this different evidence that was definitively found against Traxxas and in favor of Feld Motorsports by a jury, they say that, well, we are allowed to look to industry custom and usage. And indeed in New York law that's the case, but it's important to look at the case that talks of that. And we cite that case on page 32 of our brief, British International Insurance Company versus Seguros La Repubblica. There, the New York court explained that the industry custom and usage must be so well settled, so uniformly acted upon, and so long continued as to raise a fair presumption that it was known to both contracting parties and that they contracted in reference thereto. Here the evidence which went to, what does it mean when you use the word stampede or the stampede body or chassis? Are you talking about just one two-wheel drive brushed engine, or are you actually referring to the line? And in fact, the custom and usage evidence here, at best for Traxxas, might be inconsistent. But at worst for Traxxas, and as was shown at trial, Traxxas itself, in how it refers to the vehicle, its own controller said stampede was like the Kleenex. It refers to every model. The trade press, when the new stampede VXL 4x4 came out, described it as a stampede that's also four-wheel drive. So with respect to New York law, you can look to industry custom and usage, but it must be so crystal clear. It is crystal clear, but in favor of felled motor sports. And at best, Traxxas has only been able to try and dredge up ambiguities about that. And that, when asking for a judgment as they are here, a reversal of a jury verdict unanimous to fell motor sports is favored. It does not support their point. And I ask that you affirm the judgment below. If there are no further questions. Further questions? All right, thank you, sir. All right, back to you, Mr. Hawkins. Thank you, Chief Judge Stewart. Just a couple of points in response. On the waiver point, we spoke at length about this earlier. I provided record sites from the 50A and 50B where we preserved the issue that is now before this court. Your Honor, I think the best sign that this issue was properly preserved is the district court's own ruling. At page 2030 of the record on appeal, the district court, quote, found the license agreement to be ambiguous, and thus the license agreement is a question for the trier of fact. This court has held multiple times that notice is the touchstone of issue preservation. Obviously, the district court was on notice. It considered the argument and rejected it, and we are now appealing the denial of the Rule 50B. And for that reason, it's not waived or forfeited. Counsel also brought up the invited error doctrine in the H&H case. I wanted to respond briefly. H&H not only is unpublished, non-binding on this court, it is also unpersuasive because it doesn't fit the facts here. In the H&H case, that party never argued that the contract was ambiguous. Instead, H&H was the first party to present its case at trial, and it led off with evidence that the contract was ambiguous. Only later did it backtrack, try to reverse course, and suddenly claim that the contract was unambiguous. In this case, we were not the first party to put on evidence of ambiguity. Feld was, and we simply responded. We played the field that the district court created when it declared the contract ambiguous and sent it to a jury. Once that determination was made, we simply had to litigate our case the best way that we could. This was after pressing repeatedly that the contract was unambiguous and favored our position. And for that reason, the invited error doctrine has no application. Finally, I think it's telling that after 20 minutes of the podium, counsel did not respond to a number of the major points that we've brought up that point out the flaws in Feld's interpretation. After 20 minutes of the podium, there was never any mention of the nitro, paragraph two of the agreement, which excludes liquid fuel-powered products like the nitro from consideration. Counsel also said that the the is meant to refer to the lineup, not to the stampede. But that makes no sense, Your Honor, for two reasons. One, it's atextual. This does not say the stampede lineup. It says the stampede. Two, it's important to think about the context in which this agreement came about. This deal is about the father who takes his son into a hobby store to buy a really cool radio-controlled truck. The ones that he's going to want to buy for that kid are the $200 options, the low-end options, the stampede. He's not going to buy the $400 4x4 VXL or the 4x4. Those products are for a different market. They're reserved for serious hobbyists who take this very seriously. The entry-level customer is going to buy the stampede. That's what this deal is about. It's about giving them the option to buy the stampede or, if they're really into monster jam, to buy the Grave Digger or some other monster jam-branded product. That's the context in which this deal came about. And that's why it makes sense to refer to the stampede as that flagship model. Traxxas is the number-one-selling truck that has existed since 1994. Are they still being manufactured? Or is the contract over with? The license is basic stampede, or it's still ongoing? The licensing agreement with Felt ended in 2013, Judge Prado. Traxxas is still selling stampedes. They're still selling nitros, VXLs, 4x4, 4x4. But no royalties. That's correct. The contract ended in 2013, and there's no longer royalties being paid. So if we were, if we ruled adverse to you on either basis, assuming there's jurisdiction and we ruled against you on the merits, it would just be back to the jury verdict. Is that it? Oh, well, that's correct, Your Honor. If this court were to determine that the contract has an irreconcilable ambiguity, we have not challenged the evidence that was put onto the jury, so the jury verdict stands. Our whole point is it never should have gotten to that stage. The court should resolve it as a matter of law. Okay. So if we held that the district court did not reversibly err in denying the preserved Rule 50 motion as a matter of law, end of case? That would effectively end this case, Your Honors. We've said from the start, we've presented a clear, simple issue on appeal. The district court committed a simple but fundamental legal error. I'm not sure about the simple part, but clear there may be. Okay. As I said, I'm not saying we're doing it. I'm just trying to play around in my head to make sure I'm understanding in the midst of all the briefing kind of where this stands. Here's how to make it simple, Chief Judge Stewart. We respect the definite article. We respect Paragraph 2. We respect common sense. Feld ignores the definite article, contradicts Paragraph 2, and defies common sense. For that reason, we would ask for reversal. All right. Thank you, Mr. Hawkins, Mr. Hull, counsel. Appreciate it. It's a different case in the sense that, you know, the best part of this job is we get a lot of variety, as you can tell by the breadth of cases argued today. So, you know, this one's interesting and intriguing, and we'll consider the full record and the arguments, and in due course, we'll decide it. So thank you, Chief Judge Stewart. All right. Case be submitted. Before we bring